Laura J. Eakes
Walker & Eakes, LLC
329 F Street, Suite 200
Anchorage, AK 99507
Phone (907) 272-9255
Facsimile (907) 272-9256
laura@walkereakes.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
ALASKA KETCHIKAN DIVISION

| | |
|---|---|
| ALEX J. LEGE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF KETCHIKAN, a municipal corporation; ROBERT CHEATAM, in his individual capacity, JUSTIN OSTER, in his individual capacity, and LOUIS BONETA, JR., an individual. <br><br> Defendants. | Case No. 5:20-cv-006-HRH |

### CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Comes now defendants Robert Cheatam, Justin Oster and The City of Ketchikan (the City Defendants), by and through counsel, and pursuant to Federal Rule of Civil Procedure 56 move for SUMMARY JUDGMENT on all claims brought by Alexander Lege.[1]

Lege has sued the City of Ketchikan and two of its officers for violations of his civil rights under § 1983. He alleges that Sergeant Robert Cheatam and Officer Justin Oster entered his apartment without consent, thereby violating the Fourth Amendment.

---

[1] Mr. Lege has recently changed his name to Nobody John Lege, but the pleadings in the instant case do not appear to have been updated yet. See 1KE-21-00115 Civil. His last name will be used to avoid confusion.

He also includes state law claims for false detention/arrest and malicious prosecution.[2] Lege seeks liability against the City itself on the grounds that "warrantless" entry and arrest is a pattern and practice of the City. As will be detailed below, there is no Constitutional bar on entry into a private residence with the consent of the person in control of that residence. Officer Oster's body cam video shows Alex Lege giving that consent prior to Oster's entry. Lege never retracted that consent and even reiterated it. The witness statements gave ample probable cause for the arrest. Lege no doubt believes that Boneta was not being truthful, but officers are not required to disbelieve witnesses or face civil sanction. Based on the information they were presented with at the time, they had probable cause to arrest Alex Lege. And since there were no Constitutional violations in the process, there is no possibility of an expanded suit against the City of Ketchikan. The state law claims for wrongful arrest and malicious prosecution are likewise baseless. This suit should be resolved in favor of Cheatam, Oster and the City.

### A. Factual Background.

For our purposes, the matter begins on the evening of May 8, 2019. Alex Lege's upstairs neighbor was Louis Boneta. See Deposition of Alex Lege at 69-70 **[Exhibit A]**. Lege called the police. See Transcript of Lege's 911 Call **[Exhibit B]**. Lege's 911 call was somewhat confused. He first told the dispatcher that Boneta had tried to "bring me in" to the apartment and then "came out with a gun" after trying "to goad me into some shit and he got a fucking gun and all kind of other shit." See Lege 911 Transcript **[Exhibit B]**. Lege repeatedly told 911 that he had his knife out. Id.

---

[2] Lege's claim for assault and battery is directed against defendant Boneta and is not part of this motion.

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 2 of 18

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

In response to these calls, Cheatam and Oster were dispatched to the scene. Body cam footage shows what occurred after that point. Officer' Oster's video tape shows him walking up the stairs to the landing in front of Lege's door. See Oster Bodycam Video, 2019-05-08 at 05:06:50 to 05:07:30[3] **[Exhibit C]**; Affidavit of Justin Oster **[Exhibit D]**; Transcript of Oster Bodycam **[Exhibit E]**. Officer Oster knocked, and Lege opened the door. Id. Officer Oster asked Lege to "Take a step back." Id. Oster then clearly asked "Can I come in?" Id. Alex responded "yeah," after which Officer Oster remained in the doorway with the door frame visible to his left. Id. Alex offered himself to be searched for weapons, and Officer Oster briefly leaned in to pat him down. Id. At no point between the first contact and his arrest did Lege retract or attempt to retract consent. Nor did either officer threaten or intimidate Lege into giving consent. These facts are confirmed by the transcription, the affidavit and the bodycam footage itself. As we shall explore below, Lege himself has offered contradictory testimony on the issue of consent.

The officers conducted an appropriate investigation prior to Lege's arrest. Lege told Officer Oster that he had ongoing issues with Boneta over loud music, but his explanation was unclear. See Oster Bodycam Transcript at 2-3 **[Exhibit E]**. He apparently decided to go up to Boneta's apartment to check in with Boneta before turning his own music on. Id. at 13. Lege claimed that when he went upstairs "his daughter or whatever the lady is… .brings me in because I messaged--I ignored his message a week ago." Id. at 3. He confirmed he went through the first door to Boneta's apartment as well as the second door. Id. at 3-4. He old Officer Oster that: "She brings me in, I'm like,

---

[3] This recording has been transcribed, but the original digital file is offered as a physical exhibit in the concurrently filed Motion for Leave to File.

Lege v. The City of Ketchikan et al.; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 3 of 18

'Okay, like a month ago, he said (indiscernible),' whatever, I don't care. Okay, cool. Knock, it's like, 'We cool?' whatever...." Id. Lege then said that Boneta's wife was apparently angry. Id. at 4-5. Lege then started talking about a prior incident with Boneta before being reminded that the call was about what had happened that evening. Id. at 5. Lege confirmed he was in Boneta's living room, but claimed he had been invited in by an unnamed woman. Id. at 6-7. He then explained that he left when Boneta's wife yelled at him. Id. at 8. He said that he and Boneta went outside with their dogs and "that's when he started yelling about, 'Oh, the knife. The knife." Id. at 8. Lege subsequently claimed that Boneta had "said something" about a gun. Id. at 10. Lege denied owning a gun and said "I got my work knife." Id. Officer Oster said "It's over there," and Lege confirmed it and said "that's the only thing I've got." Id. Lege reiterated his consent by repeating "you can search my place" twice. Id. at 10. Oster conveyed this information to Cheatam, who had been upstairs interviewing Boneta and others in that residence.

Cheatam, in the meantime, had proceeded to Boneta's apartment to conduct interviews there. Cheatam Bodycam Transcript **[Exhibit F]**; Cheatam Affidavit **[Exhibit G]**. Boneta told Officer Cheatam that he found Lege "standing in my living room" and "then he starts going off and then he comes out here and talking about wanting to get busy and everything." Id. at 3. He continued: "So we get down there and I'm telling him to get in the house and leave me alone, he goes inside, grabs a knife, starts waving a knife again at me and trying to stab me." Id. at 4. Boneta said he backed up the stairs and got a bat that was in his own entryway. Id. at 14-15. Police were then called.

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 4 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 4 of 18

The Sergeant also spoke with Boneta's son Waylon, who confirmed that Lege had walked in through both doors and into the living room without permission. Id. at 15. He denied that anyone let Lege into the house or guided him to the living room. Id. at 26.; Oster Bodycam Transcript at 19-20. Oster and Cheatem then went back downstairs and entered Lege's apartment. Id. at 27-28. Lege again indicated where his knife was. Id. at 26. Lege was arrested and the knife which he had pointed to was taken as evidence. Id.

Lege was charged with Criminal Trespass in the First Degree and Assault in the Fourth Degree. The case against Lege proceeded to jury trial. See State of Alaska v. Alexander Lege Trial Transcript (excerpts) **[Exhibit H]**. Lege testified that he had gone upstairs on the night in question to see if "we could both play music like has been done in the past." Id. at 12. He testified that he walked through the first door and knocked on the second. Id. Lege described the interaction with Boneta and while denying he had a knife, admitted "I could have had the utility knife--yes, I think I had the utility knife in my pocket." Id. at 17. He admitted he took it out after he got into his apartment. Id. at 19. Lege agreed that he had voluntarily spoken with the officers. Id. at 23. At no point during or before the trial did Lege claim that his rights had been violated, nor did he claim that there was entry into his apartment by the officers without consent. No motion was made to suppress evidence.

## B. Legal Standard for Summary Judgment.

If the moving party proffers evidence that show the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See FRCP 56; Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The party opposing the motion must "set forward specific facts

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 5 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 5 of 18

showing that there is a genuine issue for trial." Anderson. (Citations omitted). Factually unsupported allegations are not sufficient. Id. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 2511. As the high court subsequently explained: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S.Ct. 1769, 1776 (2007). There is no genuine issue of material facts on the key points in this case: 1) Lege consented to entry without duress and never retracted that consent. 2) The officers had ample evidence to support probable cause for Lege's arrest for trespass and fourth-degree assault.

## C. The Record Shows That Lege Consented To Entry.

It's well established that: "A warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment applies, such as emergency, exigency, or consent." Espinosa v. City and County of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). Consent from someone with authority to consent renders an officer's entry "constitutionally permissible." Frisch v. Printz, 4 F. App'x 533, 535 (9th Cir. 2001) (citing United States v. Furrow, 229 F.3d 805, 813 (9th Cir.2000)). Consent to enter a home must be made with "no duress or coercion, express or implied" and the consent must be "unequivocal and specific and freely and intelligently given" as determined by a totality of the circumstances. United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir.1990).

This case does not involve a complex question of implied consent or authority to give consent. Lege unequivocally, specifically, freely and intelligently gave verbal

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 6 of 18
Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 6 of 18

consent for entry. There was no duress, coercion express or implied. To determine this, the court asks "...what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" United States v. Santos, 303 F.Supp.2d 333, 335 (S.D.N.Y.2003) (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). Here, there was no drawn weapon, no subterfuge, no deception, no unusual show of force or coercive surroundings. There was a request that Mr. Lege step back into his unit to allow more space for the officer, but this was distinct from the request to enter. If the actions of Officer Oster are sufficient to create a cloud on verbal consent, then it would be all but impossible for any officer to ever receive valid consent. Mr. Lege's personal issues with law enforcement do not turn a valid consent into an invalid one, given that the court is to judge the situation based on a reasonable person standard.

It's useful to compare our case to others. In one case, the Ninth Circuit has held that consent could properly be inferred where officers overtly "tricked Garcia into opening the door, grabbed the door, flashed a badge and said 'we'd like to talk to you." United States v. Garcia, 997 F.2d 1273, 1281 (9th Cir. 1993). Garcia, the suspect, responded "okay," nodded and stepped back. Id. The court concluded " that the officers' request to talk, combined with Garcia's affirmative response and step back clearing the way for the officers' entry are sufficient to give rise to an inference of consent." Id. If a situation involving deception, a grabbed door and a simple "okay" were enough to constitute valid consent, then a fortiori a calm request for permission answered by an unambiguous consent must be sufficient. Indeed, as we shall examine in the section on

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 7 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 7 of 18

qualified immunity, there doesn't appear to be any caselaw finding invalid consent in similar circumstances.

Nevertheless, Lege's complaint alleges that officers entered his home "without permission." See Complaint at para 2. As reviewed above, Officer Oster asked "Can I come in?" to which Lege responded "Yeah, go ahead." See Oster Video **[Exhibit C]**; Affidavit of Justin Oster **[Exhibit E]**; Transcript of Oster Bodycam **[Exhibit E]**. In response to this evidence, Lege claimed that Oster had "already entered my home" when he gave permission. See Lege Deposition at 64 **[Exhibit A]**. He reiterated this point "After he was already in the house, correct." Id. at 74.

Of course, the bodycam footage shows without doubt that Oster remained outside and entered only after Lege gave consent. See Oster Bodycam Video **[Exhibit C]**. Upon being shown this footage twice, Lege altered his testimony: "I think he was mid-stride, he had told me to take a step back, I was clear that I was not in control of that situation and didn't have much of a choice. He was mid-stride. I'm not about to tell this man no and obviously I'm scared, going to search me for weapons, woah, hold up, this is not how this should go. You know, I've got a different idea of how this is going to go of talking to this man in a calm, collected manner public servant." Lege Deposition at 232 **[Exhibit A]**. He claimed that "I don't have to change my story. That's not really changing my story, it's still my recollection that that happened as it went." Id. So, as Lege's testimony stands today, he has effectively withdrawn his allegation that Oster stepped into the apartment before asking permission to do so and replaced it with an equivocated half-claim. He is claiming that Oster was "mid-stride" when he asked permission to enter, and

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 8 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 8 of 18

that he somehow had no power to refuse consent. The video shows that Oster was standing still and outside the doorway.

Contradictory or internally inconsistent statements from the non-moving party are not sufficient to overcome direct evidence. See, e.g., Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). Lege's entire case is based around his theory that he never gave consent to entry. It may be that Lege hadn't seen the Oster bodycam video before he filed suit, or he may have forgotten that he gave consent. But there is no genuine issue of material fact on this point. He said without hesitation or objection "Yeah, go ahead" when Officer Oster asked him for permission to enter.

But even if we do credit Lege's "mid stride" claim--the officer would still have been within the open doorway, which is a public place for Constitutional purposes. See, e.g., United States v. Santana, 96 S. Ct. 2406, 2409 (1976). Further, when Officer Oster stepped out to talk with Sergeant Cheatam, he did not have to secure a fresh consent to reenter. See, e.g., United States v. Diaz, 814 F.2d 454, 459 (7th Cir. 1987). As far as the search, there was none. As shown above, the knife was in plain sight and Lege even directed the officers to it. This was not unconstitutional. See, e.g., Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The evidence simply undermines the keystone of Lege's entire claim in this case. Whether or not he was aware of the Oster videotape before he brought suit isn't clear. But it doesn't matter if this is the result of his own faulty memory or not--there is no genuine issue of material fact on the question of consent. Lege gave it without duress, verbally, and never retracted it. He even invited officers to search his apartment. It's inconceivable that such a set of facts could lead to a Fourth Amendment violation.

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 9 of 18
Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 9 of 18

## D. The Officers Had Probable Cause To Arrest Lege.

A warrantless arrest is valid if supported by probable cause. See, e.g., United States v. Del Vizo, 918 F.2d 821, 925 (9th Cir.1990). Probable cause exists when, "under the totality of the circumstances known to arresting officers, a prudent person would have concluded that there was a fair probability that a crime was committed." Gasho v. United States, 39 F.3d 1420, 1428 n. 6 (9th Cir.1994); Hunter v. Bryant, 112 S. Ct. 534, 537 (1991). The question of "whether or not a reasonable officer could have believed probable cause.. existed to justify a search or an arrest is 'an essentially legal question.'". See Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993) (quoting Forsyth, 472 U.S. at 526, 105 S.Ct. 2806). Courts do not require undisputed evidence of guilt to establish probable cause. See McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984). On the other hand, rumor or suspicion are not enough. Id. There has to be "some objective evidence which would allow a reasonable officer to deduce that a particular individual has committed ... a criminal offence." Id. Officers making an arrest are not required to "have individual knowledge of all the facts providing probable cause, so long as the pool of officers involved in the case possessed sufficient knowledge to supply probable cause. See, e.g., United States v. Hurlic, 956 F.2d 1168 (9th Cir. 1992). Though, as shown above, the officers in this case made a point of sharing information prior to the arrest. In this case there was probable cause to make the arrest.

Lege was charged with and tried for two Alaska crimes--criminal trespass in the first degree and assault in the fourth degree. The code defining criminal trespass in the first degree states:

> (a) A person commits the crime of criminal trespass in the first degree if the person enters or remains unlawfully

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 10 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 10 of 18

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

(1) on land with intent to commit a crime on the land; or
(2) in a dwelling.

AS 11.46.320. The code for fourth degree assault states:

(a) A person commits the crime of assault in the fourth degree if
(1) that person recklessly causes physical injury to another person;
(2) with criminal negligence that person causes physical injury to another person by means of a dangerous instrument; or
(3) by words or other conduct that person recklessly places another person in fear of imminent physical injury.

AS 11.41.230. There was probable cause to arrest Lege on these charges based on the knowledge of the officers at the time of the arrest.

As detailed above, Sergeant Cheatam interviewed the witnesses to Lege's entry into the residence of Boneta. Nobody disputed that Lege had entered as far as the living room. The only dispute on that point was whether he had permission to do so. Lege said he was allowed in, but this claim was disputed by the Boneta household. Probable cause is not undone by a factual dispute between the suspect and the witnesses. Otherwise only an admission of guilt would ever constitute probable cause for arrest. Lege's account was at times difficult to follow, while Boneta was reasonably clear. Obviously, Lege denied the claim that he had threatened Boneta with his knife. However, he admitted he had the knife and pointed to it. Lege stated in the 911 call that he had a knife in his hands for defense.

At that stage, there was ample probable cause to arrest Lege. Indeed, probable cause was apparently not disputed in the criminal trial. Lege's present suit is essentially challenging facts in hindsight, based on his acquittal. He appears to be arguing that because the knife descriptions weren't precisely the same, the officers lacked probable cause. See Complaint. However, there is no requirement that probable cause be based

on precisely accurate witness statements. Even if the knife Lege indicated was not the one Boneta was describing, the arrest was still based on probable cause based on Boneta's statement alone. In other words, there is no requirement that a weapon be found matching the victim's description in order to justify the arrest. Boneta said it was "probably the same one that he swiped up on us before." See Cheatam Bodycam Transcript at 12. This was in reference to an earlier incident between Boneta and Lege, and given the darkness it's possible Boneta did not see the weapon clearly on the night in question. It's also possible there was no knife and Boneta was lying or mistaken. But probable cause isn't undone because of a witness's misstatement--it's based on what the officers knew at the time. And that information supported probable cause for trespass and fourth degree assault.

E.  **Qualified Immunity Shields Officers From Suit.**

As we have discussed, there is no basis for any fourth amendment violation. There was verbal consent to enter and search, and probable cause for arrest. On that basis alone, summary judgment should be granted. But beyond this, the doctrine of qualified immunity shields the officers from suit for entry. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). As the high court held: "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 12 of 18
Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 12 of 18

judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." Id. The court has made it clear that: "Immunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 112 S. Ct. 534, 537 (1991). Trial courts are to "ask whether the agents acted reasonably under settled law in the circumstances." Id.

The doctrine was established "... to balance competing values: not only the importance of a damages remedy to protect the rights of citizens ... but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Butz v. Economou, 98 S.Ct. 2894, 2911 (1978). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (9th Cir. 2017). The plaintiff must show "a case where an officer acting under similar circumstances as [the officer in question] was held to have violated the Fourth Amendment" City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (citation omitted).

Here, the Lege's factual account is at odds with itself. He initially claimed that the officers entered without any consent, then when confronted with the video evidence showing his consent prior to entry he claimed the officer (shown in the video standing still) was somehow stepping into the apartment when he asked permission. But if we assume the contradictory claims of entry are admissible, and further disregard the fact that the video shows no such movement into the apartment prior to the unequivocal verbal

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 13 of 18

consent, the plaintiff would still need to show some clearly established rule prohibiting a request to enter when stepping into a doorway.

In addition, there is no established legal precedent forbidding the "mid step" consent, even if there was some reliable evidence to back up Lege's new account. To the contrary, the law clearly establishes that verbal consent is one of the exceptions to the requirement for a warrant. Lege would need to find some authority holding that officers must not enter even when they are told they can do so by the renter or homeowner. Such an authority would effectively dissolve the exception. And, even if Oster had been "mid step" from the doorway, an open doorway is a public place for purposes of the Fourth Amendment. See, e.g., United States v. Santana, 96 S. Ct. 2406, 2408 (1976).

The same is true for the question of probable cause to arrest. As discussed in a Ninth Circuit case, even if "the officers were mistaken in their conclusion that probable cause existed," the question is in this context is "whether a reasonable officer could have believed that there was probable cause." Buzayan v. City of Davis Police Dep't, 431 F. App'x 551, 552 (9th Cir. 2011). Given the circumstances here, there was ample probable cause. Lege and Boneta had different stories, but Lege had admitted having and wielding a knife. He'd also admitted entering the Boneta apartment as far as the living room before being ejected. Lege's claim that he had permission to enter was undermined by the undisputed fact that he was told to leave as soon as Boneta saw him. The officers were not required to determine who was telling the truth, and that's not what our inquiry focuses on. They had first-hand accounts that Lege had trespassed and committed fourth degree assault. No caselaw or other doctrine establishes any constitutional problems with their actions. They are therefore immune.

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 14 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 14 of 18

The City itself, of course, is not liable absent a pattern and practice of unconstitutional activities linked to the case in question. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1977). The plaintiff is currently pursuing discovery into "warrantless" searches, but as shown in detail in this motion, that is not actually at issue in this case. There was consent for the search, and no amount of extraneous material from other cases can turn a lawful search into an unlawful one. See, e.g., Sunn v. City & Cty. of Honolulu, 852 F. Supp. 903, 906 (D. Haw. 1994) ("An award of damages against a municipal corporation based on the actions of one of its police officers is not authorized if the officer has inflicted no constitutional harm.").

**F.     The Claim For Malicious Prosecution Is Without Merit.**

Lege includes a state law claim for malicious prosecution within his suit. This claim fails on a number of grounds. There are four elements to the tort, all of which are required to maintain an action:

> (1) a criminal proceeding instituted or continued by the defendant against the plaintiff;
> (2) termination of the proceeding in favor of the plaintiff;
> (3) absence of probable cause for the proceeding; and
> (4) "malice" or a primary purpose other than that of bringing an offender to justice.

Greywolf v. Carroll, 151 P.3d 1234, 1241–42 (Alaska 2007) (citations omitted). In this case, only elements 1 and 2 can be supported. As demonstrated in detail above, there was probable cause for the proceedings. Boneta reported that Lege had threatened him with a knife, and witnesses affirmed that Lege had walked into the Boneta property without permission. Lege seems to believe that the different descriptions of the knife render his arrest illegal, but there is no support for that theory. Varying witness or evidence descriptions do not undo probable cause, as discussed above.

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

There is also no evidence of malice or alternative purpose. In addition: "It is a settled rule that an arresting officer's exercise of his or her independent discretion in initiating and maintaining the prosecution is a complete defense to an action for malicious prosecution." Greywolf v. Carroll, 151 P.3d 1234, 1241–42 (Alaska 2007). So for these reasons, the claim for malicious prosecution must be resolved in favor of the moving defendants.

G. **False Arrest**

Lege has also included a state law tort claim for false arrest. The elements of false arrest are: " (1) a restraint upon the plaintiff's freedom, (2) without proper legal authority." Hazen v. Municipality of Anchorage, 718 P.2d 456, 461 (Alaska 1986). Thus, the tort is tied back to the underlying questions of constitutional authority and probable cause. Certainly, there is no question as to the credentials or authority of the individuals involved. The Alaska Supreme Court has emphasized that this cause of action is not to be transformed into a suit for "negligent investigation." See Waskey v. Municipality of Anchorage, 909 P.2d 342, 345 (Alaska 1996). As discussed above, the officers are not held to a standard of due care in hindsight in the probable cause analysis. Thus, Lege's argument that they should have done things differently or believed his account over Boneta does not constitute basis for a suit under federal or state law. See also Lacy v. Cty. of Maricopa, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008) (if there was probable cause, the claim for false arrest must fail).

**Conclusion**

Summary judgment should be granted to the City defendants. The officers did their duty well and did not violate Lege's Constitutional rights. Lege clearly gave consent

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 16 of 18
Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 16 of 18

to enter and was not under any objective duress or threat. If this consent was invalid, then it's difficult to imagine what consent could be valid. There is certainly no authority requiring officers to stand back a certain number of feet or to give warnings prior to asking for consent to enter a premises. Nor is there any requirement that officers have a crystal ball to determine which witness is lying and which witness is telling the truth. They are charged with investigating complaints and may arrest without a warrant on probable cause. Probable cause was clearly established based on the facts available to them at the time. And even if there were a potential violation, there is no authority barring what the officers did in this case. The claims against the moving defendants under federal law should therefore be resolved in their favor. Likewise, the state law claims are without merit and should be resolved by summary judgment.

DATED this 31st day of August, 2021, at Anchorage, Alaska.

>Walker & Eakes, LLC
>Attorney for Defendants
>THE CITY OF KETCHIKAN,
>ROBERT CHEATAM and
>JUSTIN OSTER

>By: /s/ Greg Henrikson (9811069) for
>Laura J. Eakes
>Alaska Bar No. 0011072

Lege v. The City of Ketchikan et al.; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 17 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 17 of 18

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and
correct copy of the foregoing was served
this 31st day of August, 2021 by:

       ___ : Mail
       _X_ : Email
       ___ : Facsimile
       ___ : Hand Delivery
       ___ : Courier

To the following persons:

Paul A. Clark
Clark Legal Services, LLC
10 Huron Avenue, #1N
Jersey City, NJ 07306
pclark@pclarklegal.com

     /s/ Amable Rosa
          Walker & Eakes, LLC

170.460/pld/2021-08-31 DEFs MSJ

Walker & Eakes LLC
329 F Street, Suite 200
Anchorage, Alaska 99501
PH: (907) 272-9255
FAX: (907) 272-9256

*Lege v. The City of Ketchikan et al.*; Case No. 5:20-cv-006-HRH
CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Page 18 of 18

Case 5:20-cv-00006-HRH   Document 39   Filed 08/31/21   Page 18 of 18